12-4393-cv
Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies, Incorporated

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 18th day of December, two thousand thirteen.

Present:     ROSEMARY S. POOLER,
             GERARD E. LYNCH,
             RAYMOND J. LOHIER, JR.,
                    *Circuit Judges*.

_____

PRIME MOVER CAPITAL PARTNERS L.P., STRATA FUND L.P., STRATA FUND Q.P.L.P., STRATA OFFSHORE FUND, LIMITED,

                    *Plaintiffs-Appellants*,

        -v-                                              12-4393-cv

ELIXIR GAMING TECHNOLOGIES, INCORPORATED, ELIXIR GROUP LIMITED, GORDEN YUEN, JOE PISANO, DAVID REBERGER, MARK NEWBERG, CLARENCE CHUNG, WALTER STOWE, MARTHA VLECK, ARNALDO GALASSI, LORNA PATAJO-KAPUNAN, JOHN CRAWFORD, VINCENT DIVITO, ROBERT MIODUNSKI, PAUL HARVEY,

                    *Defendants-Appellees*.

_____

Appearing for Appellants:    Daniel A. Osborn, Osborn Law, P.C., New York, NY.

Appearing for Appellees:     Robert A. Horowitz (Shaun A. Hoting and Michael A. Piazza, *on the brief*), Greenberg Traurig LLP, New York, NY and Irvine, CA, *for Clarence Chung, John Crawford, Vincent DiVito, Elixir Gaming Technologies, Incorporated, Arnaldo Galassi, Paul Harvey, Robert Miodunski, Mark Newberg, Lorna Patajo-Kapunan, Joe Pisano, David Reberger, Walter Stowe, Martha Vleck and Gorden Yuen.*

Robert W. Perrin, Latham & Watkins LLP, Los Angeles, CA (David J. Schindler, Los Angeles, CA and Matthew L. Kutcher, Chicago, IL, *on the brief*), *for Elixir Group Limited*.

Appeal from the United States District Court for the Southern District of New York (Kaplan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Prime Mover Capital Partners L.P., Strata Fund L.P., Strata Fund Q.P.L.P., and Strata Offshore Fund, Limited (collectively "Prime Mover" or "plaintiffs") appeal from the September 28, 2012 judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*) granting Defendants-Appellees' motion to dismiss Prime Mover's Second Amended Complaint (the "SAC") for failure to state a claim. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

In this appeal, Prime Mover argues that defendants made three categories of false statements that caused plaintiffs' losses in the stock market.[1] First, plaintiffs alleged that defendants falsely stated that defendants had "placed" certain numbers of electronic gaming machines ("EGMs") in venues throughout Asia pursuant to binding agreements, when in fact there were fewer EGMs in operation than defendants represented and the EGMs were placed pursuant to non-binding agreements. Second, plaintiffs alleged that defendants falsely stated that the EGMs had a type of software installed on them called CasinoLink, the purpose of which was to prevent theft and ensure the accuracy of the net win reports submitted by the venues where the EGMs were placed. Finally, plaintiffs asserted that defendants falsely stated that each EGM would produce, on average, a $125 per day net profit.

In the context of securities fraud litigation, "[l]oss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks and citation omitted). "We have described loss causation in terms of the tort-law concept of proximate cause, *i.e.*, that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission . . . ." *Id.* (internal quotation marks omitted). A plaintiff can establish loss causation by showing that the value of a security declined in response to either a disclosure which corrected a defendant's fraudulent statements or the materialization of a risk

---

[1] We note that with the exception of a handful of cases establishing the basic standards that a securities fraud complaint must meet plaintiffs do not cite caselaw throughout the substantive argument section of their brief. Their failure to cite caselaw violates Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure, which states that an appellant's brief must contain an argument section that includes "appellant's contentions and the reasons for them, with citations to the authorities."

that a defendant fraudulently concealed. *See In re Omnicom Grp. Sec. Litig.*, 597 F.3d 501, 511–14 (2d Cir. 2010).

In this case, the district court correctly concluded that plaintiffs failed to adequately plead loss causation with respect to the first category of defendants' statements, which related to the placement of the EGMs. Prime Mover's allegations do not create the plausible inference that defendants' statements in September 2007 about the number of placed and operational EGMs were false. Accordingly, any subsequent clarification of the number of operational EGMs did not constitute a "corrective disclosure" for loss causation purposes because that clarification "d[id] not reveal to the market the falsity of the prior [statements]." *Lentell*, 396 F.3d at 175 n.4. In addition, the SAC contains no allegation that defendants' November 8, 2008 disclosure about the non-binding nature of the agreements governing the placement of the EGMs was made public. Thus, Prime Mover failed to allege that the disclosure concerning the non-binding nature of those agreements proximately caused plaintiffs' losses. *See Omnicom Grp.*, 597 F.3d at 511 (describing the corrective disclosure theory of loss causation as based on the revelation of new information to the market).

The district court also correctly determined that Prime Mover did not adequately allege that plaintiffs' losses were caused by defendants' representations concerning the installation of the CasinoLink software. According to the SAC, defendants' disclosure on February 19, 2008, in which they adjusted their net average win projections, did not expressly reveal any information about the installation, or lack of installation, of the CasinoLink software. Instead, Prime Mover alleged that defendants' correction of its win projections "suggested" that defendants had not had reliable information about their daily net wins, which caused "concern" that CasinoLink "might, in fact, not be installed on all machines then in operation." Such speculative and qualified allegations, while potentially "consistent with [] defendant[s'] liability," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted), are insufficient to state a plausible claim that any corrective disclosure by defendants with regard to the installation of the CasinoLink software was the proximate cause of plaintiffs' losses.

Finally, the district court correctly concluded that defendants' statements about the $125 per day net win average from the EGMs was subject to the safe harbor provision of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5(c)(1). First, defendants' statements about the daily net win average were plainly forward looking under 15 U.S.C. § 78u-5(c)(1), as they were framed as an expectation or projection. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 766–67 (2d Cir. 2010). Second, properly accepting all of plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, Prime Mover failed to sufficiently allege that defendants made any statements about the $125 per day net win average with actual knowledge that their statements were false or misleading, as is required by 15 U.S.C. § 78u-5(c)(1)(B). The fact that defendants had some information that the daily net profits at some venues were less than $125 does not create a compelling inference that defendants actually knew that the $125 net win average going forward was false or misleading.

3

We have examined the remainder of Prime Mover's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk